UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| LENTON FERGUSON, | ) | |
| Plaintiff, | ) | Civil Action No. 7:14-cv-00108 |
| | ) | |
| v. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By: Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

Lenton Ferguson, a state prisoner proceeding *pro se*, filed suit under 42 U.S.C. § 1983 alleging that Defendant prison officials violated his rights under the Eighth Amendment to the United States Constitution. ECF Nos. 1, 14, 15. The Defendants filed a supplemental motion for summary judgment, ECF No. 66, and Ferguson responded. The Defendants' motion is before me for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).

Having considered the parties' memoranda and supporting materials and the applicable law, I find that Ferguson has not exhausted his available administrative remedies and that the Defendants are entitled to summary judgment as a matter of law. Accordingly, I respectfully recommend that the presiding District Judge grant the Defendants' motion and dismiss this action.

I. Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Tolan v. Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866 (2014) (per curiam). Facts are material when they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists if "a reasonable jury could return a

1

verdict in favor of the nonmoving party." *Kolon Indus., Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014) (citing *Anderson*, 477 U.S. at 248).

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Appalachian Power Co. v. Arthur*, 39 F. Supp. 3d 790, 796 (W.D. Va. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party makes that showing, the nonmoving party must then produce sufficient admissible evidence to establish a specific material fact genuinely in dispute. *See* Fed. R. Civ. P. 56(c), (e); *Scott v. Harris*, 550 U.S. 372, 380 (2007). When deciding a summary judgment motion, the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the nonmoving party's favor given the record as a whole. *See Tolan*, 134 S. Ct. at 1866; *Scott*, 550 U.S. at 380. The court does not weigh evidence, consider credibility, or resolve disputed issues—it decides only whether the record reveals a genuine dispute over material facts. *Tolan*, 134 S. Ct. at 1866.

## II. Procedural History

Ferguson is a prisoner in the Virginia Department of Corrections ("VDOC") and is housed at Red Onion State Prison ("ROSP"). *See* Compl. 1, ECF. No. 1. In his Complaint, he alleges various instances of excessive force, deliberate indifference, or failure to protect that occurred while he was an inmate at Wallens Ridge State Prison ("WRSP").[1] *Id*. 2–4. Ferguson names the following Defendants: Warden G. Holloway; Major D. Anderson; Lieutenant C. King; Unit Manager D. Collins; Sergeants J. Crabtree and B. McCray; Corrections Officers T. Bailey,

---

[1]Ferguson filed an Amended Complaint on March 28, 2014, alleging that he "suffered additional violation of his constitutional rights," when he was transferred to ROSP. ECF. No 14. In the Amended Complaint, Ferguson alleged that Officers McCurdy, Adams and Brewer assaulted him on March 23, 2014. Am. Compl. 1. On July 7, 2014, the Court separated Ferguson's complaints against the officers at ROSP on the basis of misjoinder and ordered them filed in a separate case. ECF No. 53.

2

D. Caudill, D. Davis, W. Gunter, T. Hall, J. Ewing, and S. Thompson; and Nurse C. Morgan (collectively "Defendants").

On August 1, 2014, Defendants filed a Motion for Summary Judgment, ECF. No. 56, challenging Ferguson's claims on the merits and raising the affirmative defense that Ferguson did not exhaust his administrative remedies. Ferguson opposed the motion, asserting that the Defendants prevented him from utilizing the prison grievance system, rendering the administrative remedies unavailable to him. Pl. Br. in Opp. to Defs. Mot. 2–3, ECF. No. 60.

The presiding District Judge, Michael F. Urbanski, issued a Memorandum Opinion and Order on March 24, 2015, granting in part and denying in part the Defendants' summary judgment motion. ECF Nos. 64, 65. The Court dismissed a number of Ferguson's claims. As to the remaining claims, the Court determined that it did not have sufficient information to evaluate Ferguson's assertion that he had been hindered in pursuing his administrative remedies. Accordingly, the Court ordered the Defendants to file a supplemental motion for summary judgment addressing exhaustion and the merits of the remaining claims.

On April 23, 2015, the Defendants filed the instant Supplemental Motion for Summary Judgment. They challenged the remaining claims on the merits and asserted that Ferguson did not exhaust his available administrative remedies. Ferguson responded on the merits and by asserting that he was prevented from exhausting his administrative remedies. The motion is now ripe.

III. Discussion

The Prison Litigation Reform Act ("PLRA") requires inmates to properly exhaust "such administrative remedies as are available" before filing any federal lawsuit "with respect to prison conditions." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford*

3

*v. Ngo*, 548 U.S. 81, 93 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 736–41 (2001). "There is no question that exhaustion is mandatory under the PLRA," *Jones*, 549 U.S. at 211, and that courts cannot excuse an inmate's failure to exhaust available remedies "in accordance with the [prison's] applicable procedural rules," *Woodford*, 548 U.S. at 88.

Exhaustion is an affirmative defense that the defendant must plead and prove on a claim-by-claim basis. *Jones*, 549 U.S. at 216. If the defendant makes that showing, the burden shifts to the inmate to present facts demonstrating that administrative remedies were not actually "available" to him. *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)); *Robertson v. Roberts*, No. 7:13cv560, 2014 WL 5801893, at *1 & n.1 (W.D. Va. Nov. 7, 2014) (Urbanski, J.) (noting that prisoner must prove unavailability of administrative remedies by a preponderance of the evidence).

A remedy is "available" when there is "the possibility of some relief for the action complained of." *Booth*, 532 U.S. at 739. Requiring exhaustion of administrative remedies gives prison officials the time and opportunity to address the inmate's complaint internally before being haled into federal court. *Woodford*, 548 U.S. 89; *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173–74 (7th Cir. 2011); *Moore*, 517 F.3d at 725. "Where the prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal." *Aziz v. Pittsylvania Cty. Jail*, No. 7:11cv39, 2012 WL 263393, at *4 (W.D. Va. Jan. 30, 2012) (Urbanski, J.). His failure to do so can be grounds for summary judgment on any unexhausted claim. *Reynolds v. Doe*, 431 F. App'x 221, 222 (4th Cir. 2011) (per curiam); *Robertson*, 2014 WL 5801893, at *1.

4

A.   Virginia's Offender Grievance Procedure

The Virginia Department of Corrections ("VDOC") has a multistep procedure for addressing most issues related to prison life. *See* Def. Br. in Supp. 3–5, ECF No. 57; VDOC Offender Grievance Proc., Operating Proc. ("OP") 866.1, at 6–18, ECF No. 57-1. Generally, the inmate must first try to resolve the problem informally by submitting an Informal Complaint to the appropriate administrator. *See* OP 866.1 § V ¶¶ B–F. If the inmate does not like the prison's response, or if the prison does not respond within fifteen days, he can then submit a Regular Grievance to the Facility Unit Head. *See id.* § V ¶¶ B–C.

The inmate must file a Regular Grievance form within thirty days of the incident or occurrence he wants resolved. *See id.* § VI ¶ A.1. He can grieve one issue per form and "must attach any required documentation," such as an Informal Complaint, showing that he tried to resolve the issue informally. *Id.* § VI ¶ A.2. Grievances that do not meet those criteria are promptly returned with a written explanation of why the form was rejected at intake. *See id.* § VI ¶ B. The inmate can appeal the intake decision within five days or resubmit the form as instructed. *See id.*

The prison's Grievance Coordinator must review and resolve any properly filed grievance within thirty days from the date it was received. *See id.* § VI ¶ C.1. If the Coordinator denies the grievance, or if she does not timely respond, the inmate can appeal to "Level II" review by a regional administrator. *See id.* § VI ¶¶ C.2, C.5. Level II, which has a twenty-day response deadline, is the final level of review for most issues related to prison life. *See* Ravizee Aff. ¶ 8, Aug. 1, 2014; *see also* OP 866.1 § VI ¶ C.3. The inmate must "complete" the Regular Grievance procedure in order to properly exhaust available administrative remedies. *See* OP 866.1 Attach. 1 (July 1, 2013), http://vadoc.virginia.gov/About/procedures/documents/800/866-

5

1_A1.pdf. Copies of all returned grievances, processed grievances, and appeals are kept in the inmate's grievance file. *See* OP 866.1 § VIII ¶ A.

B.  Ferguson's Grievances

To determine whether Ferguson exhausted his available administrative remedies, the Court must examine Ferguson's administrative filings and other evidence for each of the remaining claims brought in this suit. The Grievance Coordinator at WRSP, B. Ravizee, submitted two sworn affidavits addressing Ferguson's complaints and the VDOC's responses. Ravizee Aff., July 31, 2014, ECF No. 57-1; Ravizee Supp. Aff., Apr. 16, 2015, ECF No. 67-1. Ravizee listed and attached all of the informal complaints, regular grievances, and appeals that VDOC received from Ferguson regarding his claims.

In Claims Two and Three, Ferguson alleges that on July 10, 2013, Officer Gunther assaulted him and Officer Bailey assisted by restricting Ferguson's movement. Compl. 2-3. Later that day Ferguson showed Captain Anderson and Lieutenant King his injuries from Officer Gunther's assault, but they laughed at and ignored him. *Id.* He also showed Nurse Morgan his injuries and explained that he had been assaulted. Instead of noting Ferguson's report that he was injured in an assault, Nurse Morgan documented in his medical records that he hit his head. *Id*.

That same day Ferguson submitted an informal complaint. ECF No. 67-1, at 7. He reported the assault, said that he showed a nurse the bruise on his head, and complained that Lieutenant King and Captain Anderson ignored his report of the assault and his bruised head. *Id.* On July 12, 2013, Ferguson withdrew the informal complaint, and Lieutenant King signed as a witness. *Id.* In an informal complaint submitted on August 9, 2013, Ferguson complained that Nurse Morgan wrote the false entry in his medical records. ECF No. 67-1, at 15. On August 19, Nurse M. Stanford responded that Nurse Morgan wrote what Ferguson had reported to her. *Id.*

6

In Claim Four, Ferguson alleges that on July 11, 2013, Officers Ewing, McCray, Thompson, and Bailey punched him in his upper and lower ribs and stomach repeatedly while Captain Anderson supervised the assault. Compl. 3. Ravizee did not receive an informal complaint on this claim. *See* Ravizee Aff. ¶ 10. Ferguson has not provided evidence to the Court that he submitted an informal complaint although he did submit one regarding a different incident with Ewing from August 13, 2013, ECF No. 72-11, at 1–3, that is not a claim in this lawsuit.

In Claim Five, Ferguson alleges that on July 12, 2013, Lieutenant King instructed Officer Davis to assault him, Officer Davis punched Ferguson on his back and head, and Lieutenant King forced Ferguson to withdraw the informal complaint against him. Compl. 3–4. Again, Ravizee did not receive an informal complaint on this claim, *see* Ravizee Aff. ¶ 10, and Ferguson has not provided documentary evidence that he submitted one.[2] Ferguson alleges that he filed a regular grievance regarding this claim, but did not receive a response, Br. in Opp. to Summ. J., ECF No. 60, at 3, and he attaches a copy of the grievance dated July 15, 2013, ECF No. 44-1, at 6. The form does not contain a notation that it was received by a VDOC official, *id.*, and Ferguson did not provide a receipt for the grievance, *see* OP 866.1 ¶ VI.B.3 (providing that a receipt will be issued within two days of the receipt and acceptance of a regular grievance). Ravizee did not include this regular grievance as one of the forms received from Ferguson. *See* Ravizee Aff. ¶ 10.

---

[2] On August 15, 2013, Ferguson submitted an informal complaint and alleged that Unit Manager Collins tried to bully him earlier in the day. ECF No. 67-1, at 18. He also stated that Lieutenant King and Unit Manager Collins had previously tried to intimidate and manipulate him into withdrawing a complaint. *Id.* On August 31, 2013, a unit manager responded and denied the allegation. *Id.*

7

In Claim Six, Ferguson alleges that on July 14, 2013, Sergeant Crabtree punched him in the torso while Officer Claudill held him to his wheelchair. Compl. 4. The assault occurred as the two officers were taking him to the medical department. *Id.* Ferguson reported this assault in an informal complaint that he submitted on July 28, 2013. ECF No. 67-1, at 8. On August 1, 2013, a prison official responded that the Special Investigations Unit was investigating Ferguson's report. *Id.*

In Claim Seven, Ferguson alleges that Warden Holloway and Officer Collins told other inmates that he was a "snitch." Compl. 4. They also "directly and indirectly" denied him grievance forms. *Id.* On July 29, 2013, Ferguson submitted an informal complaint on this matter. ECF No. 67-1, at 9. On September 6, 2013, B. Berg responded that the complaint was unfounded. *Id.* at 10.

Ferguson was transferred to ROSP on August 16, 2013. On September 3, 2013, he submitted a formal grievance. ECF No. 57-1, at 25. He explains that this was a last attempt to exhaust all of his issues. ECF No. 44-2, at 2; Br. in Opp. Summ. J. 2. Although the grievance form instructs that only one complaint may be presented in each grievance, Ferguson wrote on the form that Officer Gunther, Officer Davis, and Lieutenant King, and Sergeant Crabtree at separate times assaulted him; Unit Manager Collins and Warden Holloway told other inmates that he was a snitch; Nurse Morgan recorded false information in the medical records; and Unit Manager Collins and others pervasively harassed him. The grievance coordinator responded three days later, returning the grievance on intake and explaining that Ferguson had included "[m]ore than one issue—resubmit with only one issue." ECF No. 57-1, at 26; B. Ravizee Supp. Aff. ¶¶ 8–9. Ferguson appealed the intake decision, but it was upheld. ECF No. 57-1, at 26–27.

8

C.   Analysis

Although Ferguson submitted informal grievances on many of his claims, he did not file a regular grievance that complied with procedural rules on any claim, nor did he pursue any claim through the appeals process to a conclusion. Claiming that he nonetheless exhausted all "available" administrative remedies, Ferguson argues that the grievance process was unavailable because prison staff prevented him from complying with each step. He contends that he was denied informal complaint and regular grievance forms, he was forced to withdraw an informal grievance, prison officials did not respond to his grievances, and he was transferred from WRSP to ROSP.

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 88. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore*, 517 F.3d at 725.

Ferguson asserts that to get an informal complaint form he had to ask a supervisor and explain his complaint. Maintaining that this procedure hindered his ability to obtain and file an informal complaint, Ferguson states that he nonetheless was able to obtain a form by lying about his reason for needing it. He offers that it was easier to obtain regular grievance forms, but he does not describe the procedure. Ferguson avers that after the incidents in this lawsuit occurred, he was initially unable to obtain any forms himself at WRSP and had to rely on other prisoners to get them for him. Ferguson Aff. 1–2, May 11, 2015, ECF No. 74; Ferguson Aff., May 9, 2015,

9

ECF No. 72-3; Ferguson Aff. 1, Apr. 17, 2014, ECF No. 44-2. The Defendants dispute these assertions. Warden Holloway advises that prisoners may obtain informal complaint and regular grievance forms from any staff member. Holloway Aff. ¶ 4, ECF No. 67-11.

The evidence in this case specifically contradicts Ferguson's general allegation that he did not have access to informal complaint forms.[3] On August 7, 2013, Ferguson submitted a request for informal complaint forms. ECF No. 14-2. The form bears a handwritten note that the request concerned Claims Two, Three, Five, and Seven of this lawsuit. As noted above, documents attached to Ravizee's Affidavit show that prior to this request Ferguson submitted informal complaints on Claims Two and Seven. He submitted an informal complaint on Claim Three on August 9, 2013, two days after his request for forms.[4] Despite Ferguson's contention that he was prevented from obtaining informal complaint forms on these four issues, documents filed with the Court show that he completed and submitted informal complaints on three of the four. Ferguson also submitted an informal complaint on Claim Six, and he has not specifically contended that he was denied a form regarding Claim Four. Additionally, from July 10 to August 16, 2013—the day Ferguson was transferred to ROSP—he filed nine informal complaints. *See* ECF No. 67-1, at 7–9, 12–16, 18. One of these he filed on August 1, 2013, against Lieutenant

---

[3] Ferguson further alleges that his written requests for grievance forms went unanswered. ECF No. 44, at 7–8. The allegedly unanswered requests Ferguson provided to the Court, however, relate to incidents at ROSP from March and April of 2014, not the alleged incidents at WRSP that gave rise to his claims in this lawsuit. *See* ECF No. 44-1, at 7–10; ECF No. 44-2, at 6.

[4] Ferguson also claims to have submitted a regular grievance on the fourth issue mentioned in the request. Although the documents submitted to the Court do not contain an informal complaint regarding Claim Five, Ferguson submitted to the Court as an exhibit a regular grievance on this issue that is dated July 15, 2013, ECF No. 44-1, at 6. He claims to have filed the grievance, but never received a response. ECF No. 60, at 3. Ravizee did not report receiving this regular grievance, and it bears no markings that it was received. Moreover, Ferguson has not provided a receipt for this regular grievance or other evidence that it was actually received, such as how or to whom the form was delivered.

King for "name calling" and general harassment. *Id.* at 13. This submission came after the date of the event alleged against Lieutenant King in Claim Five. The completed forms themselves show that, regardless of how he obtained them, Ferguson had access to informal complaint forms and was not prevented from filing them during this roughly one month period.

This case is distinguishable from the situation in *Hill v. O'Brien*, 387 F. App'x 396 (4th Cir. 2010), an unpublished Fourth Circuit opinion. In *Hill*, the prison officials relied on Hill's high-volume administrative filings to counter Hill's allegations that he was prevented from filing grievances. *Id.* at 401. Finding this explanation inadequate, the court noted Hill's allegations that his counselor did not deliver grievance forms regularly, destroyed grievances, failed to respond, and told Hill that he could not file a grievance while another was pending. Additionally, the prison officials did not file an affidavit from the counselor or otherwise address Hill's specific allegations. *Id.* at 401. The Fourth Circuit was not persuaded by the defendant's argument that access to grievance forms sometimes, on some topics, or in some institutions established that grievance forms were available in all instances. *Id.*

Unlike in *Hill*, Ferguson has only generally alleged that informal complaint forms were not available, rather than alleging specific facts to show he did not have access to them. Moreover, his general allegations are belied by the fact that he submitted informal complaints for three of the four claims he now offers as evidence that he was denied forms. Additionally, Ferguson submitted nine informal complaints during the roughly one month period that he claims he was denied access to these forms. Considering the documentary evidence that directly contradicts Ferguson's general allegations that he was denied access to informal complaint forms, this portion of his argument that the grievance process was unavailable must fail.

Ferguson also asserts that VDOC officials did not respond to his informal complaints and regular grievances. ECF No. 44, at 6; Br. in Opp. Summ. J. 2. He attaches letters addressed to the "Grievance Coordinator" in which Ferguson states that he did not receive receipts for certain informal complaints that he identifies only by number.[5] ECF No. 44-1, at 1–2. He repeated this complaint in a letter to Regional Director Hinkle. ECF No. 44-1, at 3–4. The numbers he provided correspond with informal complaints against Officers Gunther and Bailey for an assault (WRSP-13-inf-02121), ECF No. 57-1, at 19; Sergeant Crabtree and Officer Caudill for an assault (WRSP-13-inf-02319), *id.* at 20; Unit Manager Collins and Warden Holloway for telling other inmates he was a snitch (WRSP-13-inf-02331), *id.* at 21; Lieutenant King for an August 1, 2013, incident of "name calling" (WRSP-13-inf-02342),[6] *id.* at 23; and Nurse Morgan for false medical records (WRSP-13-inf-02421), *id.* at 24. A VDOC official responded to each of these informal complaints, although some of them came after Ferguson's transfer to ROSP. *See id.* at 19–24. Ferguson submitted to the Court receipt reports or the actual responses for four of the five informal complaints.[7] ECF No. 72-7, at 6–7, 10–11. Thus, his assertion that he did not have these documents is contradicted by the record and Ferguson's own submissions.

Even if he did not receive the responses in question, Ferguson was not prevented, as he contends, from filing a regular grievance. Ferguson Aff., ECF No. 72-3, at 2. The informal complaint form provides, "If no response is received within 15 calendar days, you may proceed

---

[5] Ferguson wrote another letter to the Grievance Coordinator at WRSP inquiring about the receipts for two other informal complaints. ECF No. 44-1, at 5. Those informal complaints concerned incidents that are not a part of this lawsuit. *See* ECF No. 67-1, at 18 (complaint against Unit Manager Collins for bullying on August 15, 2013 (WRSP-13-inf-02464)); *id.* at 22 (complaint against Officer Ewing for August 13, 2013, assault (WRSP-13-inf-02451)).

[6] The issue raised in this informal complaint is not a claim in this lawsuit.

[7] Ferguson also attached the informal complaint and response for the fifth, but it bears a facsimile transmission line with a date of July 31, 2014. ECF No. 72-7, at 8-9. Thus, it appears Ferguson did not have that document at the time he sent the letters in August 2013.

in filing a regular grievance. You may use your receipt as evidence of your attempt to resolve your complaint." ECF No 57-1, at 19. Ferguson has not claimed that he did not receive receipts for the informal complaints that he submitted. In the letters discussed above to the "Grievance Coordinator" dated August 19 and 26, 2013, Ferguson identifies the tracking numbers for the informal complaints he claims went unanswered. He filed with the Court receipts for two informal grievances regarding his claims against Officers Gunther and Bailey and Unit Manager Collins and Warden Holloway, ECF No. 72-7, at 6, 7, but he does not explain why he could not attach those receipts to a regular grievance or at least reference the informal complaint numbers as OP 866.1 allows. None of Ferguson's allegations about difficulties he encountered with the informal complaint process substantiate his claim that he was prevented from filing a regular grievance. Ferguson must follow each step in the administrative process rather than choose not to follow the procedure based on speculation that his grievance will be rejected as untimely or lacking necessary documentation. After all, VDOC officials did not reject his regular grievance for failure to attach an informal complaint.

Ferguson contends that he was transferred from WRSP to ROSP to prevent him from exhausting his administrative remedies. ECF 72-1, at 3. Prisoners are allowed to mail grievance forms to the facility where the complaint arose. He does not claim that he was prevented from mailing forms to WRSP. Indeed, Ravizee reportedly received the multi-issue regular grievance that Ferguson mailed from ROSP. As noted above, whether or not Ferguson had received responses to his informal complaints, he could have filed a regular grievance and attached informal complaint receipts to it. Thus, the mere fact of his transfer did not prevent Ferguson from exhausting his remedies.

Ferguson also alleges that he "attempted to exhaust the grievance process thru [sic] the mail from another facility[,]" presumably ROSP, but he did "not get any responses." Ferguson Aff., ECF No. 72-3, at 3. He asserts that he mailed "Grievances" to WRSP for Claims Two through Seven in his lawsuit. Br. in Opp. Summ. J., at 2; Ferguson Aff., Aug. 14, 2014, ECF No. 60-2. Ravizee, the Grievance Coordinator at WRSP, provided a list of informal complaints and regular grievances received from Ferguson, but the list does not include the single-issue "Grievances" Ferguson claims to have mailed from ROSP. Ferguson offers no evidence that they were received or, beyond his bare allegation, that they were created and sent. He alleges no specific facts about when, how, to whom, or where he delivered the "Grievances." In some cases, the fact that a prisoner does not possess a document that he claims he sent to VDOC officials would be unsurprising. In this case, however, Ferguson filed with the Court copies of the letters and other documents that he sent to WRSP during the period he also claims to have sent "Grievances." In those contemporaneous documents, he does not even mention these multiple regular grievances that he now claims to have mailed. Thus, none of the documents Ferguson filed with the Court support his assertion that he submitted regular grievances on each issue.

The fact that Ferguson did not receive a response to the "Grievances" he claimed he mailed does not absolve him of the responsibility to pursue his claims. He still had options. He could have requested a receipt, which regulations require to be issued within two days, showing that WRSP received his "Grievances." *See Robertson*, 2014 WL 5801893, at *3. He also was permitted to appeal to the next level after the time to respond expired. *See* Ravizee Aff. ¶ 8, ECF No. 57-1; OP 866.1 VI.D.5 ("Expiration of a time limit … at any stage of the process shall be considered a denial and shall qualify the grievance for appeal to the next level of review."). This is not to say that a prisoner must complete each step even though his filings are consistently met

14

with silence. "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

In this case, the Defendants have provided evidence that they responded to every informal complaint and regular grievance that they received from Ferguson. Unlike in *Dole*, no evidence shows that Ferguson properly presented his claim forms and prison officials mishandled those forms or otherwise took any action to prevent Ferguson from exhausting his administrative remedies. *See id.* at 810–11. Under these facts, requiring a prisoner to pursue the full grievance process for each claim achieves a significant purpose of administrative exhaustion by ensuring that a claim is actually presented to the agency for consideration. A contrary determination would allow a prisoner to avoid presenting his claim at each required administrative step by simply arguing unavailability based on an uncorroborated claim that he submitted a grievance, to which no response was given. Accordingly, Ferguson's claim that he mailed "Grievances" from ROSP to WRSP but did not receive a response does not show that he fully pursued his administrative remedies or that they were unavailable.

Ferguson also asserts that he was forced to withdraw the informal complaint against Lieutenant King. Lieutenant King states that Ferguson voluntarily withdrew his informal complaint, and he denies threatening Ferguson. King Aff. ¶ 5, ECF No. 67-12. Whether Ferguson withdrew his complaint under duress or just had a change of heart cannot be resolved on summary judgment. It is undisputed, however, that Ferguson did not resubmit his informal complaint or file a regular grievance about Officers Gunther and Bailey's assault and Lieutenant King and Captain Anderson's indifference to Ferguson's report of the assault and his injury.

15

Considering the number of other informal complaints Ferguson submitted after withdrawing this complaint, he had the opportunity and ability to resubmit it. Having withdrawn his complaint and then not reinsituted it or otherwise pursued it, Ferguson did not give VDOC officials an opportunity to address it administratively before bringing it in a lawsuit.

One final point demonstrates that Ferguson simply did not follow the administrative procedures available to him. Ferguson asserts that he submitted a multi-issue grievance after he did not receive a response to his other grievances. Br. in Opp. Summ. J. 2. Three days later, Ravizee returned the grievance on intake and explained that Ferguson had included "[m]ore than one issue—resubmit with only one issue." ECF No. 57-1, at 26. Rather than following this instruction and resubmitting a grievance on each issue, Ferguson appealed the intake decision, which was upheld. *Id.* at 26–27.

Ferguson complains that the instruction to submit one issue per grievance was vague. Ferguson Aff. 2, May 9, 2015, ECF No. 72-4. This argument is unpersuasive. The grievance manual provides that only "one issue per grievance form will be addressed." OP 866.1 § VI ¶ A.2. The Regular Grievance form provides the same instruction. ECF No 72-7, at 16. The one-issue requirement is clear, and violation of the requirement is a valid reason for rejecting a grievance. *See Moore*, 517 F.3d at 729 (finding that rejection of grievance that contained multiple issues was well founded as the grievance violated the single-issue rule). Ferguson offers no other reason for failing to resubmit a regular grievance that conformed to the rules. Because Ferguson did not submit a proper regular grievance or follow the grievance process through the final appeal stage, he did not exhaust the available administrative remedies.

16

## IV. Conclusion

The Defendants have presented evidence that Ferguson did not exhaust the available administrative remedies for any of his remaining claims. Furthermore, Ferguson's claim that he was prevented from pursuing these remedies does not create a genuine dispute of material facts. Accordingly, I find that the Defendants are entitled to summary judgment as to each of Ferguson's claims. Therefore, I respectfully recommend that the presiding District Judge **GRANT** the Defendants' supplement motion for summary judgment, ECF No. 66, and **DISMISS** this case without prejudice.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and to the *pro se* Plaintiff.

ENTER: January 5, 2016

Joel C. Hoppe
United States Magistrate Judge